**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1706
_____

WALTER JAVIER TORRENTES-SINCLAIR,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of a
Decision of the Board of Immigration Appeals
(Agency No.  A0203-558-557)
Immigration Judge:  Marium S. Uddin
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
February 8, 2021
_____

Before:  CHAGARES, SCIRICA, and COWEN, <u>Circuit Judges</u>

(Filed: September 28, 2021)
_____

OPINION[*]
_____

---

[*]  This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Circuit Judge.

Walter Javier Torrentes-Sinclair petitions this Court to review a decision of the Board of Immigration Appeals (the "BIA") affirming the decision of an Immigration Judge (the "IJ," and together with the BIA, the "agency") denying Torrentes-Sinclair asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT"). We will deny the petition.

I.

Torrentes-Sinclair, a citizen of Nicaragua, fled that country in June 2018 after several encounters with government and pro-government forces caused him to fear for his safety. As reflected in the Country Conditions Report, these encounters occurred against a backdrop of civil unrest. The Nicaraguan government, controlled by the Sandinista or FSLN party, approved unpopular social security reforms on April 16, 2018, sparking protests. Although President Daniel Ortega withdrew the reforms on April 22, the government's repressive response to the protests caused the public uprising to continue. By the end of 2018, the government had instituted a policy of "'exile, jail, or death' for anyone perceived as opposition." Admin. Record ("A.R.") 252.

Torrentes-Sinclair described several episodes that made him fear for his safety. Torrentes-Sinclair testified that on April 21, 2018, he was harassed by police for wearing a shirt depicting the Nicaraguan flag, a symbol of opposition to the black and red Sandinista flag. On April 23, he participated in a protest march in Managua, where he lived. As the protest neared the city university, Torrentes-Sinclair saw masked police deploy from unmarked trucks and beat the protestors. Torrentes-Sinclair asserted that

2

police kicked him to the ground and shot him in the face with a rubber bullet, requiring stitches.

Torrentes-Sinclair testified that on May 8, 2018, an organizer for the pro-government Sandinista Youth organization named Ramon approached him on his way home, addressed him by name, and offered him work. Torrentes-Sinclair claimed that he recognized Ramon as the person who, with the help of police officers, had taken away his neighbor in a truck two weeks earlier. Torrentes-Sinclair refused Ramon's offer. According to Torrentes-Sinclair, Ramon then called him a traitor, showed him video of the police being aggressive towards him at the April 23 protest, reminded him of the disappeared neighbor, and threatened that he "probably know[s] the consequences to this" and should be careful. A.R. 147. Following this encounter, Torrentes-Sinclair and his house were surveilled by Ramon and his associates.

Finally, Torrentes-Sinclair joined in another protest on June 21. He testified that he was again injured by masked riot police, but not as severely. He left Nicaragua a week later. He arrived in the United States on April 23, 2019 and was quickly apprehended by immigration authorities and placed into expedited removal proceedings. He was referred by an asylum officer to immigration court, where he sought asylum, withholding of removal, and CAT relief, alleging persecution based on his political opinion.

Torrentes-Sinclair appeared with counsel before the IJ on October 9, 2019, testifying to much of the above as well as to his fear of returning to Nicaragua. The IJ found Torrentes-Sinclair credible but concluded he was not eligible for relief from

3

removal.  Specifically, the IJ found that the past harms Torrentes-Sinclair suffered did not rise to the level of persecution, that he did not establish a nexus between those harms and a protected ground, and that he did not have a well-founded fear of future persecution based on a protected ground, dooming his asylum and withholding claims.  The IJ also denied the CAT claim, concluding an "independent analysis" was unnecessary since the CAT claim was predicated on the same facts as the failed asylum and withholding claims, and that in any event the record did not support a conclusion that Torrentes-Sinclair would more likely than not be tortured if returned to Nicaragua.  A.R. 85.

The BIA affirmed the IJ's decision and dismissed Torrentes-Sinclair's appeal. The BIA upheld the IJ's findings as to the severity of past persecution, fear of future persecution, and nexus, and concluded on the CAT claim that Torrentes-Sinclair had not carried his burden of demonstrating that torture was more likely than not.

II.[1]

Torrentes-Sinclair challenges the agency's determinations regarding past persecution, fear of future persecution, and the likelihood of torture.  We first consider the asylum and withholding claims, followed by the CAT claim.

---

[1] We have jurisdiction under 8 U.S.C. § 1252(a)(5).  Herrera-Reyes v. Att'y Gen., 952 F.3d 101, 105-06 (3d Cir. 2020).  Where, as here, the BIA adopts the IJ's reasoning and conducts its own analysis, we may review both decisions, and "look to the IJ's opinion where the BIA has substantially relied on that opinion."  Id. at 106 (citation and quotation marks omitted).  We review factual findings for substantial evidence and legal determinations de novo.  Id.  Decisions resting on factual findings are reversible only where "any reasonable fact-finder would be compelled to conclude otherwise."  Huang v. Att'y Gen., 620 F.3d 372, 379 (3d Cir. 2010) (citation and quotation marks omitted).

4

A.

To be eligible for asylum, an applicant must establish either past persecution or a well-founded fear of future persecution on the basis of a statutorily protected ground. 8 C.F.R. § 1208.13(b). An applicant who cannot establish eligibility for asylum necessarily cannot meet the more demanding standard for withholding of removal. Shardar v. Ashcroft, 382 F.3d 318, 324 (3d Cir. 2004).

To establish past persecution, an applicant must show "(1) an incident, or incidents, that rise to the level of persecution; (2) that is on account of one of the statutorily-protected grounds; and (3) is committed by the government or forces the government is either unable or unwilling to control." Herrera-Reyes, 952 F.3d at 105 (citation omitted). Persecution can consist of treatment "that rises to the level of a severe affront to the life or freedom of the applicant." Id. at 106 (cleaned up).

Substantial evidence supports the agency's determination that the past harms suffered by Torrentes-Sinclair do not rise to the level of persecution. The police beatings and Ramon's threats were "no doubt . . . highly improper," but "[p]ersecution is an extreme concept that does not include every sort of treatment our society regards as offensive." Jarbough v. Att'y Gen., 483 F.3d 184, 191 (3d Cir. 2007) (detention and aggressive, bruising interrogation by intelligence officers was not persecution); see also, e.g., Kibinda v. Att'y Gen., 477 F.3d 113, 119-20 (3d Cir. 2007) (five-day detention and being struck with heavy object requiring stitches was not persecution). Because Torrentes-Sinclair's past harms do not rise to the level of persecution, we need not reach the agency's nexus determination as to past persecution.

5

An applicant who has not shown past persecution may still establish eligibility for asylum by demonstrating a well-founded fear of future persecution. See 8 C.F.R. § 1208.13(b)(2). Such a fear must be subjectively genuine and objectively reasonable. Yu v. Att'y Gen., 513 F.3d 346, 348 (3d Cir. 2008). The IJ found Torrentes-Sinclair credible, so only the objective prong is at issue. To show that the fear is reasonable, an applicant must show either that she would be singled out for persecution, or that there is a pattern or practice of persecuting similarly situated persons on the basis of a protected ground. Ghebrehiwot v. Att'y Gen., 467 F.3d 344, 351 (3d Cir. 2006); see also 8 C.F.R. § 1208.13(b)(2)(iii).

Substantial evidence supports the agency's determination that Torrentes-Sinclair does not have a well-founded fear of future persecution. Given the scale of the unrest in Nicaragua, the petitioner's admitted lack of any prior political activity, and the length of time since his departure, the record does not compel the conclusion that Torrentes-Sinclair will be singled out upon his return. Similarly, the record does not compel the conclusion that that Nicaragua's pro-government forces will identify Torrentes-Sinclair with any group subject to a pattern or practice of persecution, such as anti-government protestors. See Wong v. Att'y Gen., 539 F.3d 225, 232-33 (3d Cir. 2008), abrogated on other grounds by Nbaye v. Att'y Gen., 665 F.3d 57, 59-60 (3d Cir. 2011); 8 C.F.R. § 1208.13(b)(2)(iii)(B). Torrentes-Sinclair testified that authorities could deduce, from the timing of his flight from and the circumstances of his return to Nicaragua, that he had participated in the anti-government protests. The IJ was justified in finding this worry speculative.

6

Because substantial evidence supports the agency's determination that Torrentes-Sinclair did not establish eligibility for asylum, his claim for withholding of removal necessarily fails as well. Shardar, 382 F.3d at 324.

B.

To qualify for relief under the Convention Against Torture, an applicant must show that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal," and that such torture will be committed "by, or at the instigation of, or with the consent or acquiescence of, a public official . . . or other person acting in an official capacity." 8 C.F.R. § 1208.16(c)(2); id. § 1208.18(a)(1). To evaluate whether an applicant has met her burden under the CAT, "the IJ must address two questions: '(1) what is likely to happen to the petitioner if removed; and (2) does what is likely to happen amount to the legal definition of torture?'" Myrie v. Att'y Gen., 855 F.3d 509, 516 (3d Cir. 2017) (citation omitted).

The IJ here did not address the Myrie questions, instead concluding that "an independent analysis" of the CAT claim was not necessary because it depended on the same predicate facts as the unsuccessful asylum and withholding claims. A.R. 85. But a CAT claim "is not merely a subset of claims for either asylum or withholding of removal," which are "analytically distinct." Ghebrehiwot, 467 F.3d at 358 (citation omitted). The BIA did not address the Myrie questions either. The IJ's statement that an "independent analysis" of the CAT claim was not necessary is concerning, and we remind the agency that CAT claims are analytically distinct and must be analyzed separately from asylum and withholding claims, using the framework set forth in Myrie

7

and elsewhere.  Nevertheless, any error here was harmless.  The IJ ultimately found, "based on the available evidence," that "it is not more likely than not that the respondent would be tortured if returned to Nicaragua."  A.R. 85.  The BIA likewise determined that Torrentes-Sinclair "has not demonstrated that he was previously tortured, and he has not established that it is more likely than not that he would be tortured" if returned to Nicaragua.  A.R. 5.  That is, both the IJ and BIA implicitly drew on their earlier factual analyses to find that the standard for CAT relief — a showing that torture is more likely than not — was not satisfied here.  Substantial evidence supports those determinations.

III.

For the foregoing reasons, we will deny Torrentes-Sinclair's petition for review.